**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ELIZABETH C.**

                              **Plaintiff,**                              **22-CV-810 Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #14.

## BACKGROUND

Plaintiff applied for disability and supplemental security income ("SSI"),

benefits with the Social Security Administration ("SSA"), on January 18, 2019, alleging

disability beginning March 1, 2018, at the age of 55, due to back issues, high blood

pressure and depression. Dkt. #6, pp. 273, 275, 311 & 341.

On April 20, 2021, plaintiff appeared by telephone with counsel and

testified, along with an impartial vocational expert ("VE"), Steven Feinstein, at an

administrative hearing conducted before Administrative Law Judge ("ALJ"), Stephen Cordorvani. Dkt. #6, pp.26-59. Plaintiff's counsel identified chronic lower back impairment, recurrent bacterial infections, anxiety, and depression as severe impairments. Dkt. #6, p.31.

Plaintiff testified that she lives in a house with her elderly mother. Dkt. #6, pp.31-32. Plaintiff helps her mother with meals, light cleaning and laundry. Dkt. #6, p.32. A friend helps her with heavier work like vacuuming and yard work. Dkt. #6, p.46. Plaintiff has a driver's license but has not driven in two years. Dkt. #6, p.33. A friend takes her grocery shopping. Dkt. #6, p.33. Plaintiff testified that she experiences constant burning pain and numbness in her lower back. Dkt. #6, pp.37-38. Sitting and lifting make the pain worse. Dkt. #6, p.38. It is uncomfortable to sit for more than 15-20 minutes or to stand for more than 10 minutes, so she tends to shift around a lot trying to get comfortable. Dkt. #6, p.40. She will lay down twice a day for about an hour. Dkt. #6, p.45. She cannot lift more than a gallon of milk. Dkt. #6, p.46. Plaintiff attends physical therapy, which helps, but does not alleviate her pain. Dkt. #6, p.39.

Plaintiff also described recurring breakouts or abscesses on her head which feel like slivers and itch terribly, prompting her to shave her head. Dkt. #6, pp.43-44. She is treated with antibiotics or anti-viral medication. Dkt. #6, pp.40-41. She has also been diagnosed with anxiety and depression, which makes it difficult to concentrate. Dkt. #6, p.42. She explained that she will have plans to go somewhere, but will start itching and can't concentrate, causing her to become self-conscious and cry.

Dkt. #6, p.42. She doesn't understand why it happens, but has lost motivation and isolates herself. Dkt. #6, pp.43-44.

When asked to assume an individual with plaintiff's age, education, and past relevant work experience who was capable of medium exertion and limited to no direct skin exposure to concentrated cleaning solvents, chemicals or industrial liquids, the VE testified that such an individual could work as a nurse assistant or home attendant, which was plaintiff's past work, and constituted medium exertion, semi-skilled positions, and could also work as a meat clerk, store laborer, and hand packager, which were medium exertion, unskilled positions. Dkt. #6, pp.56-57.

The ALJ rendered a decision that plaintiff was not disabled on May 3, 2021. Dkt. #6, pp.128-139. The Appeals Council granted plaintiff's request for review on July 5, 2022. Dkt. #6, p.10. In a decision dated August 31, 2022, the Appeals Council considered additional medical evidence that had been submitted, but was not considered by the ALJ, and determined that this evidence did not change the findings made by the ALJ. Dkt. #6, pp.10-13. Plaintiff commenced this action seeking review of the Commissioner's final decision on October 28, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits her ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet

the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate whether the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2018; (2) plaintiff's alopecia areata and mild degenerative disc disease of the lumbar spine constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at the medium[1] exertion level but could not have skin exposure to concentrated cleaning solvents, chemicals or industrial liquids; and (5) plaintiff was capable of performing her past relevant work as a home attendant or nurse assistant, which are semi-skilled medium exertion positions and could also work as a meat clerk, store laborer or hand packager, each of which are unskilled medium exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.130-138.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567 (c).

Plaintiff argues that the ALJ failed to properly assess the opinion of her primary health care provider, Michael J. Ostolski, F.N.P., regarding plaintiff's mental and physical RFC, and erroneously relied upon the opinions of non-examining state agency consultants who did not examine plaintiff and based their opinion upon an incomplete record. Dkt. #7-1, pp.15-30. More specifically, plaintiff argues that the ALJ erred in determining that plaintiff's mental impairments were non-severe and subsequently failing to include any mental limitations in plaintiff's RFC. Dkt. #7-1, pp.15-23. Plaintiff also argues that the ALJ's determination that plaintiff was capable of performing the full range of medium work is not supported by substantial evidence because the non-examining state agency consultant rendering that opinion did so without the benefit of subsequent diagnostic imaging and treatment notes that support greater restrictions. Dkt. #7-1, pp.25-26.

The Commissioner responds that the ALJ's determination that plaintiff is capable of performing the full range of medium exertion work without any mental limitations is supported by substantial evidence. Dkt. #10-1, p.2. The Commissioner argues that the ALJ reasonably determined that FNP Ostolski's opinion regarding plaintiff's mental and physical limitations was not persuasive because it was not consistent with plaintiff's treatment records or reported activities of daily living. Dkt. #10-1, pp.14-18. Specifically, the Commissioner argues that the ALJ's determination that plaintiff's adjustment disorder was not severe and did not require limitations to plaintiff's mental RFC is supported by substantial evidence given plaintiff's lack of mental health treatment, benign mental status examination results, and reported activities of daily

living. Dkt. #10-1, pp.6-13. Furthermore, the Commissioner argues that subsequent medical records do not demonstrate a significant change in plaintiff's physical or mental condition that would render the state agency opinions stale or undermine that ALJ's determination that plaintiff is capable of performing medium exertion work without mental limitations. Dkt. #10-1, pp.19-20.

On March 1, 2021, plaintiff's primary care provider throughout the relevant time period, FNP Ostolski, completed a medical opinion questionnaire relating to physical activities[2] diagnosing plaintiff with anxiety, depression, high blood pressure, chronic back pain and frequent skin infections. Dkt. #6, pp.727-729. FNP Ostolski opined that plaintiff could sit and stand/walk for about two hours in an eight hour workday, but could not sit or stand continuously for more than 30 minutes at a time and would require the ability to change position at will throughout the day. Dkt. #6, p.727. He further opined that plaintiff would require a 30 minute break every 1-2 hours. Dkt. #6, p.727. FNP Olstolski opined that plaintiff was capable of lifting no more than ten

---

[2] FNP Ostolski also completed a medical opinion questionnaire regarding plaintiff's mental impairments, noting that she was diagnosed with anxiety/depression. Dkt. #6, p.723. FNP Ostolski opined that plaintiff was unable to complete a normal workday and workweek without interruptions from psychologically based symptoms or deal with normal work stress and that she would be seriously limited in her ability to interact appropriately with the general public; remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; and set realistic goals or make plans independently of others. Dkt. #6, pp.723-724. FNP Ostolski also opined that plaintiff would be absent from work due to her impairments or treatment more than twice a month. Dkt. #6, p.725.

pounds occasionally with significant limitations reaching, handling or fingering due to

paresthesia of her right hand. Dkt. #6, p.728. She could never climb stairs or ladders,

but could twist, stoop and crouch occasionally. Dkt. #6, p.729. She should not be

exposed to extreme temperatures, high humidity, fumes, odors, dusts, gases,

perfumes, cigarette smoke, solvents, cleaners or chemicals. Dkt. #6, p.729. FNP

Ostolski also opined that plaintiff would be absent from work more than twice a month.

Dkt. #6, p.729.

The ALJ determined that FNP Ostolski's opinion was not persuasive

because it was "not well explained and the severity of the limitations are not consistent

with the contemporaneous medical records." Dkt. #6, p.136. In support of this

assessment, the ALJ determined that FNP Ostolski had

> not documented significant mental health findings in his
> treatment notes. He indicates that the [plaintiff] has followed
> elsewhere. There are no mental status evaluation findings or
> other indications to support the limitations identified.

Dkt. #6, p.136. With respect to plaintiff's physical impairment, the ALJ noted that in

February of 2021, FNP Ostolski

> made no significant findings on examination and the
> [plaintiff] denied symptoms upon review. At a [physical]
> therapy evaluation, the [plaintiff] had normal strength and no
> neurological issues, but some range of motion deficits.
> These finding are not consistent with the level of limitation
> proposed in [FNP Ostolski's opinion].

Dkt. #6, p.136. The ALJ also noted that although plaintiff complained of pain to FNP

Ostolski, plaintiff had "never been referred to or sought treatment with an orthopedist,

neurosurgeon, or other specialist." Dkt. #6, p.134.

-8-

The ALJ also considered a consultative medical examination[3] conducted by Despina Isihos, D.O., on September 11, 2019. Dkt. #6, p.135. Plaintiff complained of hair loss, recurrent bacterial infections, history of MRSA infection, anxiety, depression, adjustment disorder and hypertension. Dkt. #6, p.541. She also described a history of scoliosis and lower back pain that was occasionally painful. Dkt. #6, p.542. Plaintiff reported that she was able to cook 2-3 times per week, wash laundry weekly, shower 5-7 times per week, and dress herself daily. Dkt. #6, p.542. Plaintiff was observed to be in no acute distress, with normal gait and ability to rise from a chair without difficulty and get on and off the examination table without assistance. Dkt. #6, p.543. She was able to walk on heels and toes without difficulty and perform 50% of a full squat. Dkt. #6, p.543. Her cervical spine and forward flexion and extension was limited to 30 degrees

---

[3] Plaintiff also underwent a consultative psychiatric evaluation with Susan Santarpia, Ph.D. on September 11, 2019. Dkt. #6, p.537. Dr. Santarpia opined that plaintiff

> presents as able to understand, remember, and apply simple as well as complex directions and instructions, use reason and judgment to make work related decisions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, be aware of normal hazards and take appropriate precautions within normal limits. Mild to moderate impairment is demonstrated in interacting adequately with supervisors, coworkers and the public, regulating emotion, controlling behavior, and maintaining well-being. Difficulty is caused by stressors due to general medical conditions.

Dkt. #6, p.540. The ALJ found Dr. Santarpia's consultative opinion "only somewhat persuasive," explaining:

> Dr. Santarpia opined that the [plaintiff] may have mild to moderate limitations in social interactions, but the [plaintiff] reported living with her mother, socializing with friends, shopping and maintained normal presentation and eye contact. The examination does not show findings consistent with social limitations, other than the [plaintiff's] report. Similarly, the [plaintiff] endorses increased symptoms with stressors, but the [plaintiff's] mental status examination was benign.

Dkt. #6, p.136.

bilaterally, with full rotation and lateral flexion 35 degrees bilaterally. Dkt. #6, p.543. Her lumbrosacral spine forward flexion was 75 degrees with 0 degree extension and lateral flexion and rotation full bilaterally. Dkt. #6, p.543. Her straight leg raise test was negative bilaterally. Dkt. #6, p.543. She had full range of motion of shoulders, elbows, forearms and wrists bilaterally and full range of motion of hips, knees, and ankles bilaterally. Dkt. #6, p.544. Her strength was 5/5 in the upper and lower extremities. Dkt. #6, p.543. Her hand and finger dexterity was intact, with grip strength 5/5 bilaterally. Dkt. #6, p.544. Dr. Isihos opined that plaintiff would have a mild restriction for prolonged ambulation, repetitive bending, twisting maneuvers and heavy lifting and recommended that she avoid any known topical irritants and chemicals that could irritate or aggravate her skin. Dkt. #6, p.544.

The ALJ found Dr. Isihos' consultative opinion "only somewhat persuasive" because "some of the limitations identified appear based on the [plaintiff's] subjective complaints rather than any findings on examination," explaining that plaintiff

> complained of low back pain with occasional radiation, but . . . was limited only in lumbar flexion and extension, had normal straight leg raises, and had full strength and sensation. The [plaintiff] had normal gait, Again, the [plaintiff] is under no treatment for back pain.

Dkt. #6, p.136. However, the ALJ found the recommendation that plaintiff avoid skin irritants to be reasonable based on plaintiff's issues with skin lesions. Dkt. #6, p.136.

The ALJ determined that the "most persuasive" opinions came from the state agency medical consultants, M. Butler, Ph.D. and B. Stouter, M.D. Dkt. #6, p.136.

On September 18, 2019, state agency consultant M. Butler, Ph.D., reviewed the record

of evidence and determined that plaintiff's mental impairment was non-severe, with no

limitation in her ability to understand, remember or apply information; mild limitation in

her ability to interact with others; no limitation in her ability to concentrate, persist or

maintain pace; and mild limitation in her ability to adapt or manage herself. Dkt. #6,

pp.104-105. Dr. Stouter completed his assessment on October 7, 2019 and opined that

plaintiff could lift and/or carry 25 pounds frequently and 50 pounds occasionally; could

sit and stand and/or walk about 6 hours in an 8-hour work day, with no push and/or pull

limitations. Dkt. #6, p.107.

Overall, the ALJ determined that the evidence of record relating to

plaintiff's complaints of chronic low back pain demonstrated "mild abnormality and only

minimal and inconsistent treatment." Dkt. #6, p.134. In support of this assessment, the

ALJ noted that

> An x-ray [o]f the lumbrosacral spine in October 2019 showed
> well maintained intervertebral spaces, and mild
> dextroscoliosis. [Dkt. #6, p.550]. An x-ray of the lumbar
> spine in March 2020 showed degenerative disc disease at
> L5-S1 with mild facet joint hypertrophic changes at L1 and
> L5 as well as mild thoracolumbar scoliosis, but no other
> abnormality. [Dkt. #6, p.641]. The [plaintiff] did not complain
> of any back pain at an office visit in December 2020. She
> engaged in minimal physical therapy treatment, including
> attending two visits in March 2020,[4] and a new intake

---

[4] Plaintiff presented for an initial physical therapy evaluation on March 27, 2020 with complaints of lower back pain which interfered with her activities of daily living, cleaning, laying down and standing in one position too long. Dkt. #6, p.699. She reported that walking seemed to help. Dkt. #6, p.699. Her lumbar flexion was observed to be 70% of normal, with extension at 15% of normal, and rotation and side bending 50% of normal bilaterally. Dkt. #6, pp.699-700. Plaintiff tolerated physical therapy well on April 3, 2020, but was discharged for failure to attend on June 11, 2020. Dkt. #6, pp.643-644 & 709-710.

appointment in March 2021.[5]

Dkt. #6, p.134. The ALJ further noted that plaintiff "admits that she can perform all of her daily activities and enjoys gardening, and moved in with her mother to assist her." Dkt. #6, p.136.

Generally speaking, an ALJ should not rely on stale opinions, such as opinions rendered before some significant development in the plaintiff's medical history. *Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021). Thus, a "medical opinion issued without reviewing the entire record can be considered stale." *Sonia N.B.A. v. Kijakazi*, 21-CV-709, 2022 WL 2827640, at *5 (D. Ct. July 20, 2022). However, a medical opinion will not be consider stale merely because it pre-dates other evidence in the record if subsequent evidence does not undermine the opinion. *Id.* A stale medical opinion may not constitute substantial evidence to support an ALJ finding. *Omayra V. v. Comm'r of Soc. Sec.*, 2025 WL 484495, at *5 (D. Ct. Feb. 13, 2025); *See Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp.3d 603, 608 (W.D.N.Y. 2020)(Medical source opinions that are conclusory, stale or based upon an incomplete medical record cannot constitute substantial evidence in support of a plaintiff's RFC).

Although the ALJ did recognize the March 5, 2020 lumbrosacral x-ray of plaintiff identifying L5-S1 degenerative disc disease and mild facet joint hypertrophic

---

[5] Plaintiff presented for an initial physical therapy evaluation on March 3, 2021 with complaints of low back pain that radiated to the hips and thighs, causing aching, gnawing and throbbing pain aggravated by activity. Dkt. #6, p.711. Her lumbar flexion and extension and sidegliding was observed to be 50% of normal, with rotation and sidebending within normal limits. Dkt. #6, pp.711-712.

degenerative changes at the L4 and L5 levels, he found most persuasive the opinion of a non-examining state agency medical consultant who based his assessment of plaintiff's physical RFC on an x-ray that identified nothing more than mild dextroscoliosis. As objective evidence of degenerative disc disease can be expected to impact a plaintiff's capacity for physical exertion, the Court finds that the ALJ erred in relying upon the state agency consultant's opinion to determine plaintiff capable of performing medium exertion work. *See Omayra V.,* 2025 WL 484495, at *6 (remand required where ALJ found persuasive the opinion of a state medical examiner who did not review an MRI and subsequent orthopedist treatment notes that undermined his opinion of plaintiff's functional limitations); *Rosario v. Kijakazi*, 20-CV-5490, 2022 WL 875925, at *16 (S.D.N.Y. Mar. 15, 2022) (opinion of non-examining state agency reviewer issued nearly two  years prior to the hearing involving impairments which were not even diagnosed at the time of the opinion cannot constitute sufficient medical opinion evidence to adequately assess plaintiff's RFC).

As this error will necessarily require the ALJ to reassess other medical source opinions, the Court declines at this juncture to address plaintiff's arguments regarding the sufficiency of the ALJ's assessment of FNP Ostolski's opinion, which may impact the ALJ's assessment of plaintiff's physical RFC as well as the ALJ's assessment of the severity of plaintiff's adjustment disorder. *See Fambo v. Comm'r of Soc. Sec*., 474 F. Supp.3d at 608-609  (declining to reach additional arguments where it has been determined that remand for further administrative proceedings are necessary).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is granted and the matter is remanded to the Commissioner for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #10), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**   **Buffalo, New York**
       **March 30, 2026**

            **s/ H. Kenneth Schroeder, Jr.**
            **H. KENNETH SCHROEDER, JR.**
            **United States Magistrate Judge**

-14-